Williams Livestock Company v. Commissioner.
Williams Livestock Co. v. Commissioner
Docket No. 60174.
United States Tax Court
T.C. Memo 1958-17; 1958 Tax Ct. Memo LEXIS 218; 17 T.C.M. (CCH) 78; T.C.M. (RIA) 58017; January 31, 1958
William McRae, Esq., Security Building, Phoenix, Ariz., for the petitioner. Earl C. Crouter, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the income tax of petitioner in the amount of $7,080.53 for the fiscal year ending June 30, 1953. The sole issue is whether the petitioner, during its fiscal year ending June 30, 1953, sustained an ordinary loss or a loss from a bad debt as the result of certain transactions in October and November 1952. Findings of Fact Petitioner is an Arizona corporation. It engaged in the business of owning and operating a cattle ranch. It kept its books on the basis of a fiscal year ending June 30th. It filed an income tax return for the year ending June 30, 1953, with the director *219 of internal revenue at Phoenix, Arizona. Although the return contains a statement that it was prepared on an accrual basis, petitioner followed the cash basis of accounting in the net income computations and schedule of farm income and expenses set forth in the return. During the period here involved Sam Spitalny was president of the Calizona Land and Cattle Company (hereinafter referred to as "Calizona"). He or his family owned practially all of Calizona's stock. Its office was located in his home in Phoenix, Arizona. He was also the secretary and treasurer of petitioner. Petitioner's office was in Phoenix, and Betty Spitalny, wife of Sam Spitalny, owned 50 per cent of its stock. He was the manager of both petitioner and Calizona, and had authority to draw checks of large amounts on both companies. During the months of October and November 1952, these companies exchanged checks. When these checks were issued neither of them had sufficient funds in the bank for their payment. The checks had no relationship to any business transaction, had nothing to do with the operation of either company, and were for other than a business purpose. No notes were given for any of the amounts or checks *220 transferred back and forth between petitioner and Calizona. Petitioner maintained a bank account with the Farmers and Stockmens Bank in Phoenix, Arizona. The aforementioned checks issued by petitioner payable to Calizona were as follows: October 31, 1952
$ 60,000
October 31, 1952
50,000
November 1, 1952
50,000
November 1, 1952
40,000
November 5, 1952
40,000
November 5, 1952
55,000
Total
$295,000 Each of these checks was signed on behalf of petitioner by Sam Spitalny as "Sec.-Treas.-Pres.", and was endorsed "For Deposit to the acct. of Calizona Land & Cattle Co." Payment of the amount of each check was made by the Farmers and Stockmens Bank. Calizona maintained a bank account with the Citizens National Trust & Savings Bank of Riverside, Blythe, California. The aforementioned checks issued by Calizona payable to petitioner were as follows: October 31, 1952
$ 70,000
November 3, 1952
78,000
November 5, 1952
72,000
Total
$220,000 Payment of the amount of each of these checks was refused by the Citizens National Trust & Savings Bank. The reason given for such refusal was "Not sufficient funds". Entries designed to reflect the foregoing *221 check transactions were made on the books of petitioner in November 1952. Sam Spitalny died in November 1952. In the latter part of December 1953, the Farmers and Stockmens Bank brought suit against petitioner, Calizona, and Betty Spitalny in the Superior Court of the State of Arizona, in and for the County of Maricopa, in connection with the checks. Petitioner filed a pleading in January 1954, denying liability. On September 11, 1956, judgment was entered against petitioner and Betty Spitalny in the amount of $164,916.34. The judgment was satisfied by a negotiated settlement between the parties which resulted in the payment by petitioner, on February 2, 1957, of $49,539.65 in satisfaction of its liability. In its return for the year ending June 30, 1953, the petitioner claimed a deduction for bad debts in the amount of $122,308.02. The respondent allowed $14,786.25 of this amount, and disallowed the remaining $107,521.77. The explanation given by him for the disallowance in the notice of deficiency was as follows: "An amount of $122,308.02 was deducted as bad debts. Of this amount $107,521.77 results from the failure of the bank to honor checks drawn by Calizona Land and Cattle *222 Co. The amount has not been paid by Williams Livestock Co. nor has the liability of Williams Livestock Company for these checks been definitely established. In view of the above the amount may not be deducted as a bad debt." Opinion RAUM, Judge: In its petition the petitioner alleged that the respondent erred in failing to allow the amount of $107,521.77 as a bad debt deduction for its fiscal year ending June 30, 1953. It now concedes that it is not entitled to deduct this amount as a bad debt. It contends, however, that it is entitled to deduct, as a loss sustained during that year under Section 23(f) of the 1939 Code, the amount of $49,539.65. The evidence produced by petitioner is confusing and skimpy. It does disclose, however, that Sam Spitalny, who managed both petitioner and Calizona, drew a number of checks at about the same time (in late October and early November 1952) on the bank account of each corporation and deposited them in the account of the other, notwithstanding the absence of bank balances in sufficient amounts to support all of the checks - an activity sometimes referred to as "check-kiting". These checks were unrelated to the business activities of either *223 corporation. Subsequent to June 30, 1953, petitioner's bank brought suit against it, Calizona, and Betty Spitalny (wife of Sam) in connection with such checks. Judgment was finally entered in that suit on September 11, 1956, against both petitioner and Betty Spitalny in the amount of $164,916.34. On February 2, 1957, petitioner paid the bank the amount of $49,539.65 in satisfaction of its liability under the judgment. Petitioner urges that it is entitled to deduct the amount of $49,539.65 as a loss sustained in its taxable year ending June 30, 1953, because it was on an accrual basis, the loss is traceable to transactions which occurred in that year, and the liability therefor was then incurred. We do not agree. The only evidence submitted by petitioner to show that it was on an accrual basis is its return for the taxable year. Although petitioner indicated in its answer to question 9 that that return was prepared on an accrual basis, substantially all of its income was from sales of livestock which was reported on Form 1040-F "Schedule of Farm Income and Expenses". The income on this schedule was reported on the cash receipts and disbursements basis. Even if it be assumed, however, *224 that petitioner was on an accrual basis, it would still not be entitled to the claimed deduction in the taxable year. Under the accrual method of accounting a liability accrues and is deductible from gross income when all the events have occurred which fix with reasonable certainty the fact and the amount of that liability. ; . And in instances where liability is substantially in controversy, accrual must await the resolution of the controversy. ; . Here the amount, if any, that petitioner was to pay the bank as a result of the check transactions was not fixed during the year ending June 30, 1953, and did not become fixed until 1957. It was not, therefore, accruable or deductible in the taxable year. This being our conclusion, we do not deem it necessary to discuss the respondent's contention that the amount paid would not be deductibe in any event because any loss sustained by petitioner was not incurred *225 in connection with transactions that were pertinent to the conduct of its business. Cf. . Decision will be entered for the respondent.